Connie L. FARLEY, Petitioner,

v.

**PRUDENTIAL INSURANCE COMPANY**
**et al., Respondents.**

No. B–2869.

Supreme Court of Texas.

April 26, 1972.

Rehearing Denied June 7, 1972.

Carter, Callender & Branton, Jonathan Sox, San Antonio, for petitioner.

John R. Bryant, Thompson, Knight, Simmons & Bullion, J. P. Jones, Dallas, for respondent.

DENTON, Justice.

Prudential Insurance Company of America filed this suit impleading petitioner, Connie L. Farley, and the respondent, Rhonda Riley Burleson, who were adverse claimants to the proceeds of a Group Life Insurance Policy on the life of Lt. John H. Farley, deceased. Prudential tendered the amount of the policy into the registry of the court and filed a motion for summary judgment to be discharged from liability. The trial court granted the insurer's motion, from which no appeal has been taken. The trial court also granted respondent Burleson's motion for summary judgment awarding her the proceeds of the policy. The court of civil appeals affirmed 468 S.W.2d 147. We reverse the judgments of both courts and remand the cause to the trial court.

Lieutenant Farley, a Cavalry officer in the U. S. Army, took out the life insurance policy pursuant to the provisions of the Servicemen's Group Life Insurance Act, 38 U.S.C.A. § 765 et seq. On October 10, 1967, he named Rhonda Lavon Riley, a friend, as the designated beneficiary of the policy. She remained his only formally designated beneficiary on file with the United States Army at the time of his death.

Respondent Burleson subsequently married and is the former Rhonda Lavon Riley. In reply to the interpleader action respondent alleged that as the Army records show that she was the designated beneficiary, she was entitled to the proceeds, and moved for a summary judgment. The trial court granted the summary judgment and awarded her the proceeds. The court of civil appeals sustained the summary judgment, holding that there was no evidence of probative force that Lt. Farley executed an instrument changing his beneficiary to Connie L. Farley, which was received in the offices of his uniformed service prior to his death.

Lieutenant Farley married the petitioner, Connie L. Farley in Hawaii on December 2, 1968, while on rest and relaxation leave. He returned to the war zone and was killed in action on June 2, 1969. The petitioner alleges that after Farley's return to Viet Nam, he executed the necessary change of beneficiary form to designate her as his beneficiary of the policy in question. She further alleges that the Army misplaced the form or that it was lost in the combat zone.

To support her claim, petitioner pleaded that her husband did in fact execute a change of beneficiary form designating her as his named beneficiary. She filed the depositions of two servicemen who were at Dong Tam, Lt. Farley's base camp, during the period in which he would have made the beneficiary change. The depositions are by Chief Warrant Officer Jesse C. Morrisett, who was in charge of Lt. Farley's personnel file while he was at Dong Tam, and Sgt. Edward Bill, the Chief Legal Clerk in the Judge Advocate General's office at Dong Tam. Morrisett testified that his office, the Adjutant General's office, was the proper place for such changes to be made. He testified that Lt. Farley came into the office prior to his marriage to inquire about changing the necessary papers to reflect his coming marriage. Morrisett said that he asked Farley to return if he did get married. He said that Farley did return to the office after his marriage and that he was directed to fill out the necessary forms. Morrisett stated that Farley wanted to make a change of beneficiary on his Servicemen's Group Life Insurance Policy, but that his office was out of the proper forms. Morrisett sent Farley to the Judge Advocate General's office in order for them to prepare a form reflecting the change of beneficiary. Morrisett further testified that it was the Judge Advocate General's office that was responsible for seeing that the form was returned to his office so that they could

make sure a copy was placed in Lt. Farley's official file in the Department of the Army. Morrisett did not see Farley again after he sent him to the legal office. Morrisett further testified that correspondence between offices was unreliable and that mail service was poor and that there were times when entire records in an office would be destroyed.

Sergeant Bill testified that he remembered a cavalry lieutenant coming into the Judge Advocate General's office to request aid in changing the beneficiary of his Servicemen's Group Life Insurance Policy. He could not identify Lt. Farley by name but stated that the cavalry officer was between five feet nine inches (5′ 9″) and six feet (6′) tall, and that he was light complexioned. He "distinctly" remembered the incident because the lieutenant was a cavalry officer, and they were "a unique organization. They wore their yellow scarves, their swords and everything else, swashbuckling . . . they dressed very distinctively. They liked to show off a little bit." He stated that the lieutenant had just returned from Hawaii where he had been married. Bill testified that a form was prepared by the captain in the Judge Advocate's office, and that he was present when the lieutenant executed the change of beneficiary form designating his new wife as the beneficiary of his SGLI insurance. He remembered the incident because the request was unusual in that this task was normally performed by the Adjutant General's office. He said that the form was prepared after he verified that the Adjutant General's office was out of the proper forms. Bill testified that he remembered the event to have been before December 15, 1968, because after that date, he believed that the Adjutant General's office received the proper forms as no other soldiers came in for assistance in changing their beneficiaries. He stated that several other individuals came in for assistance prior to that date, but that the cavalry lieutenant was the only officer that he could recall who had come in for such assistance. Bill testified that he had to personally take

charge of the change of beneficiary matter because his office had undergone an almost complete change-over in personnel and the new men were not qualified to handle the task. The petitioner's own affidavit stated that "Lieutenant John H. Farley, my husband, was about five feet eleven inches (5′ 11″) tall, of medium weight and stature, and was fair complexioned."

■ It is settled that the question on appeal and in the trial court is not whether the summary judgment proof raises fact issues with reference to essential elements of a cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. Gibbs v. General Motors Corp., 450 S.W. 2d 827 (Tex.1970).

■ The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. All conflicts in the evidence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Parrott v. Garcia, 436 S.W.2d 897 (Tex.1969); Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41 (Tex.1965).

The Federal Statute governing the payment of proceeds of Servicemen's Group Life Insurance policies is 38 U.S.C.A. § 770(a):

"(a) Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death; * * *."

In construing the Servicemen's Group Insurance Act, Stribling v. United States, 419 F.2d 1350 (8th Cir. 1969) held:

"Although we apply a literal construction to 38 U.S.C. § 770(a), we find it difficult to comprehend any real difficulty confronting a serviceman desiring to designate or change his beneficiary, even in Viet Nam. The statute does not specify that any particular or complex government form be used. It only requires 'a writing.' The regulation appurtenant to the statute requires that the writing be signed by the insured, 38 C.F.R. § 9.16(c), a condition easily fulfilled. The recipient of the writing—'the uniformed services'—is defined in 38 U.S.C. § 765 (3) to be 'the Army, Navy, Air Force, Marine Corps, Coast Guard, Public Health Service, and Environmental Science Services Administration.' The regulation adds the qualification that the writing be received by the *insured's* uniformed service. 38 C.F.R. § 9.16(c). In essence, then, a serviceman can literally satisfy the statutory and regulatory requirements by handing a simple written and signed designation or change of beneficiary to his superior officer. This surely is not burdensome."

The question then is whether respondent Burleson's summary judgment proof established as a matter of law that she was entitled to the proceeds of the insurance policy. Unless respondent's summary judgment evidence had the effect of disproving petitioner's contention that Lt. Farley executed the change of beneficiary form to designate her as his beneficiary and that the form was received by his uniformed service, as pleaded, the motion should have been denied. Torres v. Western Casualty and Surety Co., 457 S.W.2d 50 (Tex.1970); Gibbs v. General Motors Corp., (supra).

The test to be applied in cases involving identity is thus stated in Wigmore on Evidence, Third Edition, Volume II, § 411:

"Identity may be thought of as a quality of a person or thing,—the quality of *sameness with another person or thing*. The essential assumption is that two persons or things are first thought of as existing, and that then the one is alleged, because of common features, to be the same as the other.

\*   \*   \*   \*   \*   \*

" . . . [In] the process of identification of two supposed objects, by a common mark, the force of the inference depends on the *degree of necessariness of association of that mark with a single object*.

\*   \*   \*   \*   \*   \*

"The process of constructing an inference of Identity thus consists usually in adding together a number of circumstances, each of which by itself might be a feature of many objects, but all of which together make it more probable that they coexist in a single object only. Each additional circumstance reduces the chances of there being more than one object so associated." [Author's emphasis].

Testimony of Sgt. Bill and Chief Warrant Officer Morrisett places them both serving at Dong Tam at the same time and at the time Lt. Farley returned from leave in Hawaii. Morrisett identified Farley by name and Bill gave a description of him that coincided with that given by his wife. Both Bill and Morrisett were contacted by this cavalry officer for a common purpose—to make a change of beneficiary on his insurance policy. Both men testified the person dealt with had just returned from Hawaii and had recently married. Both agreed that during this period the Adjutant General's office was out of the necessary forms for change of beneficiary and the Judge Advocate's office was the place that a form would be prepared. The two servicemen's testimony confirmed that these circumstances existed at the time material here. Bill testified a form was prepared by a captain in the Judge Advocate's office, and that Bill witnessed the execution of the form by the cavalry officer he described.

When respondent filed her motion for summary judgment, she was required to meet petitioner's claim as pleaded and supported by her summary judgment evidence. Respondent did not discharge her burden by merely showing she was the designated beneficiary on file with the uniformed services. The record clearly raises a material issue of fact. The motion for summary judgment should have been denied.

We reverse the judgments of the courts below as to the judgment for respondent Rhonda Lavon Riley Burleson and remand the cause to the trial court for further proceedings consistent with this opinion.